OWEN DEVELOPMENT COMPANY V. ROY CALVERT ET AL.

No. A-6010. Decided May 22, 1957.
(302 S.W. 2d Series 640.)

*Murph Wilson, Spruell, Lowry, Potter & Lasater* and *Chas. F. Potter*, all of Tyler, for petitioner.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit was filed by respondents against petitioner to recover damages for the depreciation in cash market value of certain personal property, as well as damages for the loss of use of a part of that property. The pleadings alleged that the petitioner, through its servants and agents, negligently (1) set fire to some grass near the building in which said personal property was situated at a time when neither of the respondents or any of their employees were present, (2) negligently failed to completely extinguish the grass fire before leaving it, and (3) negligently failed to properly watch and inspect the premises after setting the grass fire, and that each act of negligence was a proximate cause of the damages sustained by respondents. The pleadings alleged an additional item of damages and sought to recover the sum of $760.00 covering the sum money paid by respondents for services of employees in cleaning up the debris after the fire. As to this item, the Court of Civil Appeals required and the respondents filed a remittitur, therefore, there is no issue in this Court relative thereto.

Based upon favorable jury findings, the trial court entered judgment for the plaintiffs. The Court of Civil Appeals modified the judgment to the extent of correcting an error in calculation and in disallowing judgment for $760.00. This resulted in a judgment for plaintiffs in the total sum of $8875.00. Of this amount $7600.00 was awarded as damages under the difference in value theory, and $1275.00 under the loss of use theory, 292 S.W. 2d 839.

■ Under the view we take of this case we find it unnecessary to pass upon the question presented by petitioner in its first

point. The point presents the contention that regardless of whether the suit be one for loss of use or loss of profits, the respondents, having elected to also sue for the difference between the value of a chattel (two trucks) before the harm, and the value after the harm, cannot as a matter of law recover also for the loss of use of the same property. Regardless of whether the suit be one to recover damages for loss of use or to recover for loss of profits as a result of the loss of use of the trucks, a question we do not decide, we have concluded that this case must be reversed because of the erroneous submission of the loss of use theory through Special Issues 19 and 20.[1] Petitioner objected to both issues for the reason that such issues were comments upon the weight of the evidence and gave undue prominence to thirty-one work days and assumed that respondents lost profits because of the loss of use of the trucks during said thirty-one-day period of time. We must sustain petitioner's point on this question which is to the effect that Issues 19 and 20 amount to comments upon the evidence, in that they suggest a period of thirty-one days in which plaintiffs lost profits; thereby giving undue prominence to this arbitrary time and to the testimony of the plaintiff, F. A. Cotey."

■ While the objection does not mention the name of F. A. Cotey, yet the trial court heard the testimony and knew at the time the objection was made that plaintiff, F. A. Cotey, was a party to the suit, and an interested party, and that the issue of loss of use was a contested issue. The trial court knew that the testimony of Mr. Cotey was the only witness who testified about the 31-day period and the loss of $100.00 per day. Under such circumstances the jury should have been left free to find that the loss of use of the property was for a less period than 31 days. It may be argued that the testimony as to time and damages as a proximate result was undisputed, and, therefore, if it was error to submit the issues in the manner complained

---

[1]"SPECIAL ISSUE NO. 19.

"Do you find from a preponderance of the evidence in this case that the damages to Plaintiffs' property which occurred on August 24, 1954, proximately caused a loss of any net profits to them for a period of thirty-one (31) work days immediately following the fire?

"Answer 'Yes' or 'No.'

"ANSWER *Yes*.

"SPECIAL ISSUE NO. 20:

"What sum of money, if any, do you find from a preponderance of the evidence in this case have plaintiffs lost by reason of the loss of net profits from their business during a period of thirty-one (31) work days immediately following the fire resulting from the fire of August 24, 1954?

"Answer in dollars and cents, if any.

"ANSWER *$1275.*"

of, such error was harmless. We cannot so hold. The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the jury or trial court. Mills v. Mills, Txas Com. App., 228 S.W. 919; Id. 111 Texas 265, 231 S.W. 697. However, the rule is not without exception. The case of McGuire v. City of Dallas, 141 Texas 170, 170 S.W. 2d 722,728, states an exception that:

"* * * Where the testimony of an interested witness is uncontradicted, is clear and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony, conclusive effect may be given thereto. Trinity Gravel Co. v. Cranke, Texas Com. App., 282 S.W. 798, loc. cit. 801; American Surety Co. v. Whitehead, Texas Com. App., 45 S.W. 2d 958, loc. cit. 961. The applicable rule is further strengthened where the testimony of the interested witness is, as in this case, corroborated by other witnesses and the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. Simonds v. Stanolind Oil & Gas Co., 134 Texas 332, 350, 114 S.W. 2d 226, 136 S.W. 2d 207."

Our case does not come within the purview of the exception. There is evidence in the record that tends to discredit the testimony of the interested party and such evidence would warrant a finding by the jury of an amount considerably less than the sum sued for as well as the amount in damages for loss of use. Mr. Cotey testified on direct examination that the loss was $100.00 per day for 31 days; that at the rate of $100.00 per day per truck for 200 working days in 1954, the partnership would have earned $40,000.00. The testimony of the interested witness was not corroborated by any other witness or evidence as to either the time period of 31 days or the net profit of $100.00 per day. While the time period of 31 days was not, standing alone, an ultimate issue, the fact remains that at the time the charge was prepared and the objection to issues 19 and 20 were made, such time period was a dominant factor, through evidence given by the interested party alone, for the jury to consider in arriving at an answer to these particular issues. The Court in submitting issue No. 19, for example, tied the jury to a definite period of 31 days, thereby singling out and giving prominence to the testimony of Mr. Cotey, an interested witness, and assuming that the period of 31 days must be accepted as the number of days to be used as the basis in determining the loss of net profits suffered by the respondents. Under the record and taking into consideration the charge as a whole, we cannot say, as we did in the case of Texas Employers Insurance

Association v. McKay, 146 Texas 569, 210 S.W. 2d 147, that the error in special issues 19 and 20 was harmless (Rule 434, T.R.C.P.). It is our conclusion that the error in the charge was reasonably calculated to cause and probably did cause the rendition of an improper judgment. See Johnson v. Zurich Gen. Acci. & Liability Co., Texas Civ. App., 202 S.W. 2d 258, affirmed in 146 Texas 232, 205 S.W. 2d 353; Rule 277, Texas Rules of Civil Procedure.

■ Ordinarily our holding on this point would require a remand of this case for a new trial, and, therefore, such action would render it unnecessary to pass upon the points claiming error in connection with the difference in value theory of the case. However, the respondents have filed a supplemental brief stating therein that in the event this Court should hold they were not entitled to "these lost profits as found by the jury," but should uphold the judgment otherwise, then; instead of reversing and remanding the case for a new trial, we should reform the judgment by ordering that plaintiffs take nothing as to their suit for loss of use of the trucks, and render judgment in their favor for $7600.00. The error above discussed only affects the judgment awarding plaintiffs the sum of $1275.00 as damages for loss of use of the trucks. This item was submitted separately, and in the event no error otherwise exists, the judgment should be reformed as suggested by plaintiffs. See Texas Employers' Ins. Ass'n. v. Lightfoot, 139 Texas 304, 162 S.W. 2d 929; Hill v. Texas, New Mexico & Oklahoma Coaches, Inc., 153 Texas 581, 272 S.W. 2d 91.

■ We, therefore, next consider petitioner's points two, three, and five to ascertain whether or not any of these remaining points reflect error. We have concluded that they do not. These points concern themselves with the difference in value theory of the case.

Point 2 presents the contention that Special Issues 2, 4, 6, and 9[2] (issues on proximate cause) were comments upon the

---

[2]"SPECIAL ISSUE NO. 2:

"Do you find from a preponderance of the evidence that the failure of Owen Development Company to notify the plaintiffs or their employees that the fire was to be set was a proximate cause of the fire to the plaintiffs' property?

"Answer 'Yes' or 'No.'

"ANSWER *Yes.*

\* \* \* \* \*

"SPECIAL ISSUE NO. 4:

"Do you find from a preponderance of the evidence that the burning of the grass by E. R. Grant and the parties with him at a time when neither of the

evidence, in that they assumed that the grass fire spread to and ignited the building.

The evidence shows that on the morning of August 24, 1954 petitioner's servants and agents set fire to the grass near the building; that these servants and agents were members of a fire department; that the fire department was owned and operated by petitioner; that the work ceased about 10:45 a.m., and only one inspection was made between that hour and 2:30 or 3:00 p.m., that afternoon, the time of the discovery of the fire; that the rules and regulations of the fire department required an inspection every hour. Douglas Wright testified that he discovered the fire, and that it was burning on the outside of the building near the bottom of the door and "possibly along the west side of the building near the door." The petitioner introduced evidence tending to show by inference at least that the fire started from within the building; that the oils stored therein caused a spontaneous combustion. The evidence, however, showed that the oil had a combustible temperature of 600 degrees Fahrenheit, and that a spontaneous combustion was not likely. The court submitted the issues of negligence and proximate cause to the jury. The court also submitted an issue inquiring as to whether the fire spread to and ignited the building, and the jury answered in favor of respondents. We hold that these issues were correctly submitted and were not subject to the objection urged against them. No ultimate issue of fact was assumed in any of these issues. The jury was left free to determine from the evidence the issue as to whether the fire

plaintiffs or their employees were present was a proximate cause of the fire to the plaintiff's property?

"Answer 'Yes' or 'No.'

"ANSWER *Yes.*

\* \* \* \* \*

"SPECIAL ISSUE NO. 6:

"Do you find from a preponderance of the evidence trat the failure of E. R. Grant to make or to have made more than one inspection of the area around the plaintiffs' building after Grant and the other parties had finished their grass burning in that area, if you have so found, was a proximate cause of the fire to the plaintiffs' property and their damage, if any?

"Answer 'Yes' or 'No.'

"ANSWER *Yes.*

\* \* \* \* \*

"SPECIAL ISSUE NO. 9:

"Do you find from a preponderance of the evidence that the failure of E. R. Grant and the other parties working with him to extinguish the fire they had set on the morning in question, if you have so found, was a proximate cause of the fire to the plaintiffs' property?

"Answer 'Yes' or 'No.'

"ANSWER *Yes.*"

eventually spread to and was the proximate cause of the resulting fire. See Pickens v. Harrison, 151 Texas 562, 252 S.W. 2d 575,581.

■ Point 3 reads: "Special Issues No. 17 and 18[3] (concerning the market value before and after the injury) were comments upon the evidence because they assume that plaintiffs' property was 'destroyed by fire at the time and on the occasion here in question as alleged in Paragraph 6' of plaintiffs' petition."

The petitioner presented several objections to these issues in the trial court, but the only objection urged here is that the reference to "Paragraph 6" amounts to a comment upon the weight of the evidence and assumes that respondent's property was destroyed by fire as alleged in Paragraph 6 of plaintiffs' petition. These issues were submitted in order to determine the value of the property before and after the fire. There is nothing about either issue that assumes the value of the property involved. The reference to Paragraph 6 in each of the issues was surplusage, and under the record in this case was at most harmless error. The petition containing Paragraph 6 was not allowed to be sent in the jury room. The jury did not have the petition or any of the pleadings before it during its deliberations. We hold that this point does not present such error as was reasonably calculated to cause and probably did cause the rendition of an improper judgment.

■ Point 5 complains of the ruling of the trial court in allowing the witness R. M. Swann to testify concerning the market

---

[3]"SPECIAL ISSUE NO. 17:

"What do you find from a preponderance of the evidence was the reasonable cash market value (as that term is herein defined) of the property that was destroyed by the fire at the time and on the occasion here in question as alleged in Paragraph 6 of Plaintiffs' First Amended Original Petition immediately prior to said fire on August 24, 1954?

"Answer in dollars and cents, if any.

"ANSWER $10,000.

＊　＊　＊　＊　＊

"SPECIAL ISSUE NO. 18:

"What do you find from a preponderance of the evidence was the reasonable cash maket value (as that term is herein defined) of the property that was destroyed by the fire at the time and on the occasion in question as alleged in Paragraph 6 of Plaintiffs' First Amended Original Petition immediately after the said fire on August 24, 1954?

"Answer in dollars and cents, if any.

"ANSWER $2400.

"By the term REASONABLE CASH MARKET VALUE, as used in this charge, is meant the price property will bring when offered for sale by one who desires to sell but is not obligated to sell and is bought by one who desires to buy but is under no necessity of buying."

value of respondents' two trucks which were damaged in the fire. The only objection to this evidence being that the witness had not seen the trucks for two months before the fire, and, therefore, was not qualified. We overrule this point. It is true the witness had not seen the trucks for two months, but an examination of the record convinces us that the trial court did not commit error in permitting the witness to testify concerning the market value of the trucks before and after the fire.

Since the only error in this case affects the portion of the recovery awarded respondents for loss of the use of their trucks, the judgment of the Court of Civil Appeals is reversed for the reason heretofore indicated, and judgment is here rendered in favor of respondents and against petitioner for $7600.00. All costs are adjudged against the respondents.

Opinion delivered May 22, 1957.